If it pleases the Court, my name is Robert Perry. I represent Plaintiffs' Appellants D.D. Halleck and Jesus Pappaletto Melendez. We ask the Court to reverse the District Court's judgment for the reasons set forth in our brief. I will address several points in support of that position. Contrary to the District Court's view, Plaintiffs plausibly alleged state action on MNN's part in suspending their programming from the Cable Public Access Channels in Manhattan. First, because those channels are required by the City as a condition of the franchise and open to all comers, that is, available free of charge on a first-come, first-serve, non-discrimination basis as mandated by State Public Service Commission regulations. They are a designated public forum of unlimited character, to use Justice Kennedy's words in the Denver area case. That Those are his words, for which he had one other justice, right? That's correct, Your Honor. That's not yet the law of the United States. No, that's correct, Your Honor. You have to tell us why he's right and the other three are wrong. I understand that, Your Honor. That MNN is a private entity offering television channels does not preclude public forum analysis, because such analysis applies not only when speakers seek access to public property, but also when they seek access to private property dedicated by government to public use. The Cable Public Access So there was the Lincoln Center case, the hotel case, where we said that notwithstanding the fact that Lincoln Center had been, in effect, ceded this public property, it was not a public forum. How do you distinguish that case? I'm sorry. I'm a little bit, I'm not, I don't recall the facts entirely of that case. I remember reading that, but it wasn't cited in any of our briefs. I can't Well, it was cited in their briefs. It's, I'm sorry. I just, I just don't recall, recall. You're asking us to make a, you're making a blanket statement. It seems to me that there can, in every case involving private property, if there's sufficient government interaction or sufficient, sufficient government role, that can transform the private property into a public forum. Is that right? That is what I'm saying. I'm saying, Your Honor, if the property is dedicated by government to public use, public expressive activity And in the Lincoln Center case, the name of which, it's a union, a hotel union, Lincoln Center, the city had provided Lincoln Center with the property, but we concluded that that was not a public forum, notwithstanding the city's involvement. I'm not entirely, I can't remember the facts of that case entirely, Your Honor. If there was Let me change the topic a little bit. Other than the fact that it involved leased channels, how do you distinguish this case from the Locey case? There are two reasons why Locey is distinguishable. First, Locey, and if I might elaborate for a minute on leased channels, leased access channels, unlike public access channels, are not open to all comers. They're not available free of charge. The cable operator may charge a fee to the user well in excess of the processing or administrative costs. And secondly, there's not even a clear nondiscrimination first come, first serve requirement in the Federal statute for leased access. As a majority of the justices concluded in Denver area, leased access requirements are more akin to common carrier regulation of telephone companies. The other reason why Locey is not controlling here is there was no public forum issue in Locey. The plaintiffs there But there was an issue as to whether the MNN is a state actor. And they held that they were not. And if they were not a state actor, why does it make a difference whether the person seeking the access is willing to pay for the time or wants it for nothing? Well, because we're not arguing, as the plaintiffs did in Locey, that there was state action by virtue of a joint venture between Time Warner Cable, which ran the cable systems in Rochester and Syracuse, and the government. We're arguing instead that there's state action here because there's a public function. And that's why the public forum doctrine is important. If the public access channels are public fora, then MNN's regulation of speech in those channels It's a matter of the cable company being required to delegate that role to MNN, right? Actually, I believe it was the city that delegated It's the government. I mean, really, what difference does it make? You have, you either have a cable operator or you have a delegate of the cable operator deciding that some programming cannot be allowed. And the question is, are they functioning as state actors? In Locey, the answer was no. I'm sorry, in what? In Locey, the answer was no. No, and that's correct, Your Honor, but it was a different theory of state action asserted there, and there was no public forum doctrine issue raised or argued in that case. If it's a public forum, if they're not a state actor, then they can't be sued under this. Well, if it's a public forum, Your Honor, it's opposition. If it's a public forum, then MNN is engaged in a public function in running these channels. What is the best Supreme Court or Second Circuit case that says that? So what you're saying is that regulating speech in a public forum necessarily entails a public function exception. That's that's the argument. That's that's what is the give me one case, Supreme Court or the Second Circuit that says that? I can I can only cite to the to the Denver area, Judge Justice Kennedy's concurring partial concurrence, partial dissents in that case. And I can cite and I did cite in our briefs to the I believe it's the Lee case from the Ninth Circuit stating that the regulation of speech in a public forum is a classic public function. And is it your view that the contract with the city is what renders this a public forum? My view, what renders this a public forum is not only the contract with the city. But the contract is where you start. That's that's correct. Is that contract in our record? I it's it's I don't believe other than the allegations in the in the complaint. I found that extraordinary because it looks like you're proceeding, building on a contract and we don't have it. And neither did the district court, which is, I guess, more relevant. But there are allegations, Your Honor, in the complaint as to the contents, the relevant provisions in the contract. Is there also an administrative complaint before, currently before the PSC? No, there is no present administrative complaint. I see I'm running over my time, Your Honor. Do you want me to continue? In other words, you want us to go with those provisions you've alleged without seeing the whole contract? Those, we submit those are the most relevant provisions. They may be the most relevant, but if if the next provision undercuts them completely, I want to know it. I, I, I believe I cited everything that was relevant to. I'm sure you cited everything useful to your case. I have no doubt of that. It's still, I'm amazed we don't have the contract and I'm wondering if there's a way to get it. Well, the contracts are available online, Your Honor. All of these franchise agreements are available online on the New York City. Are they something you think we can take judicial notice of? Yes, Your Honor. Is there some extrinsic evidence that would affect their meaning? Or is there no question that the text alone is all we need? The text alone would be fine for my response. Yes, Your Honor. Thank you. You have three minutes rebuttal. We'll hear you then. Thank you. May it please the court. My name is Michael DeLue with Kozen O'Connor. I represent the MNN appellees. Our position is that the district court got this one exactly right. There is no state action, and in the absence of state action, appellants cannot maintain a First Amendment claim against MNN or the other MNN appellees. There's no dispute that MNN is a private, non-profit corporation. It was designated by the Manhattan Borough President in 1992, but it has never been controlled by the city, and it's not currently controlled by the city. The district- They would be privileged to decide that the only broadcasts with political content could be sponsored by or produced by one political party and not another. That's incorrect with all due respect because of the requirements in the public service commission regulations that require no editorial role for MNN or another organization in MNN's situation. It's very similar to the least access- Isn't it an editorial decision to decide that somebody cannot produce programming that you will put on the air? I'm saying that the public service commission regulation does not allow us to make any editorial decisions. Well, isn't what's at issue here an editorial decision? Well, that is arguably what they've pledged, but they did not plead that clearly. That would be for the public service commission. That would be for the public service commission to decide, and as the district court held, there is a regulatory avenue for public access producers to- That's the administrative complaint that was filed? There wasn't one filed in this case, but the district court noted that there is an avenue for producers to take, and they have taken it. Traditionally, in the past, they go to the public services commission and then proceed through an administrative proceeding there. If the contract from the city is thought to render the channel a public forum, does the first amendment apply? It would depend on how the contract did that. It typically- That's what I thought. Typically, no. We didn't offer it either. We didn't. I mean, and the reason we don't offer it is because there's no allegation of state action here. There's no plausible allegation of state action. If, you know, there are- If it's a public forum, does the first amendment apply? Well, there are- in our brief, we've tried to distinguish between constitutional public forum, in which case, yes, it would, and public forum in the way that it's used sort of colloquially. No, I don't mean colloquially. You mean a constitutional public forum. I mean a public forum to which I thought the first amendment normally applies. Now, you may say it doesn't. That's why I'm asking you, if it's a public forum, do you agree the first amendment applies? Yes, but for it to be a public forum, there would have to be state action, and there is none here. The contract would have to be of the type that would make clear that there is, in fact, state action. For example, the city would have to maintain control over the board of MNN so that it can control decisions, which is the test that the Supreme Court used in the LeBron case. Do you agree that with your adversary that since the contract's online and apparently there's no dispute about its terms, we can take judicial notice of the entire contract? I believe so. I don't know for certain that it's online, but if it is, I would imagine it's accurate. I don't see a reason why you couldn't take judicial notice of it. You know, finding it online sounds easy until you try to do it. I'm aware of that. I can't believe it's unavailable to you gentlemen. Why don't you lodge it with the clerk of court with a cover letter asking that it be supplied to the three members of this panel and do it by 5 o'clock today, is that possible? Would you be willing to do that? Do you have it? Yes, it's possible. Yeah, I mean, if it's online, then it's easy, right? The district court looked at the LeBron test, applied it, and because the vast majority of Eminent's board is independent, only two members of the board are controlled by or appointed by the Manhattan Borough President. Similarly, with the public function test, the court looked at the public function test and said this is not a public function because running a television studio is not a traditional and exclusive role of government, which I think is exactly the right analysis. There is, you know- Well, has it become one? I mean, in Cornelius, the court said the streets were owned by the city, but they were from time immemorial, they said, dedicated to as a place where people can speak, right, cities and parks. They were private property, right, in Cornelius? I believe that's correct. Okay. So now you've got channels that, not from time immemorial, but from the beginning of cable, have been private property. Correct. But if they become used by city fiat as public access where anyone can speak, don't they get to be a little bit analogous to a street? Well, analogous perhaps, but as a point we made in our brief is that there are plenty of things that are analogous.  Don't they become similar enough to a street as a place where all are invited to speak to be subject to the First Amendment? Respectfully, I don't believe so. A quad at a private university doesn't take on the, isn't transmogrified into public property just because people are allowed to say anything that they want in a quad at a private university. But not everybody can go to that public university. Not everybody can. This is dedicated to public access, is it not? First come, first served. That's true. Like a street or a park. Fair. I think that the, this Court's decision in Locey, though, is very similar. In Locey, not everybody could do it. Leased is, there's no, again, there's no ability for the station to make editorial decisions. The only ones that the city, that they can make are related to obscenity or indecency. If you ever get to editorial contact, not everybody could get that lease. This is public access. Everybody on first come, first served can get this. That's true, but I don't know that that, I don't think that makes a difference. I don't think that that makes a difference. Was the leasing in Locey on a first come, first served basis? Yes. There were no editorial decisions that they could make other than the obscenity that they could do originally and the indecency that came in. You're answering, I think, a different question. I'm sorry. It may be that once they get the lease, there's no editorial control. But you're being asked, is the leasing on a first come, first served, or is it a negotiated process where the lessor can pick and choose? I don't think that the court, this court in Locey actually makes clear, and I don't know that the decision below actually makes clear on that either. Your argument is also that because of the lack of editorial control, effectively the cable operator doesn't have, it's not a public forum. Is that correct? Correct, right. That's your idea. Doesn't that just mean it might be a public forum, but he hasn't violated the First Amendment? Well, in the absence of, again, in the absence of state action, which is the sine qua non qua non for it being a public forum, a constitutional public forum, that's where I believe we're, we've made clear that that's the key part of our argument, is that there's no state action. So even though it looks like, to some degree, a public forum, it's not. Or Ms. Hallock, there was a one year suspension. Has that run? Yes. But it's a permanent, does that make her claim moot? I think that it does. What about Mr. Melendez? That's a permanent suspension. That's an indefinite suspension. Indefinite. That was based upon his suggesting that it would be good if people associated with MNN died. Well, right. And my understanding is that there were also other things that are even in the complaint that other confrontations that also went into that decision as well. Thank you. Thank you. Good morning. May it please the court. My name is Scott Shore and I represent the city of New York. This court should affirm the dismissal of plaintiff's claims against the city because they failed to allege that a municipal policy or custom caused a violation of their First Amendment rights. There are three potential or arguably plausible bases for municipal liability, but none of them were sufficiently alleged. There are the complaints made to the borough president, which appear in one paragraph of the complaint. There's the award of the cable franchises and there's the selection. I'm not sure that you can slight somebody for stating a claim briefly, crisply, and directly. That's what people are supposed to do. Well, that. What's wrong with that one? That particular paragraph does not allege a customer policy. All it says is that Ms. Halleck and others have complained to the borough president about MNN censorship. That's it. It doesn't say what the borough president did. It doesn't say what the borough president was supposed to do. It doesn't say what the substance of the complaints was. It's relatively obvious that he didn't do anything. Well, that's not as obvious as one might think. Possible that he didn't do anything. But the court is permitted to draw reasonable inferences from the allegations, but of course the court is not permitted to make up facts that aren't in the complaint. For all we know, the borough president called MNN and said you need to do something about this. We don't know. It's not in the complaint. The argument made for the first time on appeal is that, well, the borough president should have exercised its authority to rescind the designation to MNN. That's kind of a red herring because the plaintiffs themselves did not seek rescission of the designation. That's not part of the relief that appears in the complaint. In fact, they no longer seek any relief against the city, which is an additional reason to affirm the dismissal of the claims against the city. They had a claim for money damages, but they withdrew that claim. They have a claim for declaratory and injunctive relief, but that only applies to MNN. Let me ask you about the underlying issue and the public forum issue in particular. Is it the city's position that these public access channels are not a public forum in any way, shape, or form? And if so, why? The city believes, just as a matter of constitutional precedent, that cable public access channels are not a designated public forum. I heard Judge Jacobs, I believe, mention, or maybe it was Judge Newman, I'm sorry, mention the city fiat doctrine. And I would note that this, normally when that fiat doctrine applies, it's the city, it's the government that has an obligation in the first instance to provide whatever the service is. And here, the city does not have an obligation to provide cable public access channels. The city doesn't even have an obligation to franchise companies like Time Warner to run cable TV. The city's only obligation is conditional. If it awards a cable franchise, then the cable franchise agreement must contain certain provisions as a matter of state law. And among those provisions is that the cable operator must set aside channels for public access. So this is not a traditional sort of public forum created by fiat. Who are the other board members? Who selects those board members? He's the Manhattan Borough President. I know the Manhattan Borough President selects two. I don't know who selects the others. I'm sorry, Your Honor. And I know the court has asked us to submit hard copies of the franchise agreements and the grant and use agreement, to which the latter of which the city is not a party to. And we will do that. But I should note that in our brief in footnotes one and two, we do provide the URLs where those documents can be found. I should also say, with respect to municipal policy and custom, that the city, of course, can't incur Monell liability for complying with state regulations that bar the city from exercising editorial control over the public's use of public access channels. There is one argument raised improperly for the first time on reply that I thought I should respond to briefly. The plaintiffs say, well, you could have enforced a provision of the grant and use agreement that requires access on a first come, first serve basis. As I mentioned, the city is not a party to that agreement. And there's no legal authority cited by the plaintiffs that the city can exercise the rights of a third party beneficiary in this. It's not sought in the complaint. It is not sought in the complaint. Thank you. Thank you. We'll hear rebuttal. Very briefly, Your Honor, Ms. Halleck's claim is not moot. She still cannot air the 1% program on the cable public access channels in Manhattan, nor may she include Mr. Melendez as a guest in that programming. My understanding of LOCIE is that there is no first come, first serve requirement for least access channels. What's left of your claim against the city, because you haven't withdrawn it? I haven't withdrawn the claim against the city. My claim against the city is based upon deliberate indifference. In retrospect, I wish I had specifically used that word. What? Deliberate indifference? That's correct, Your Honor. That's your theory. That's my theory. In retrospect, I wish I had elaborated on that. And you're sticking with it. And I'm sticking with it, Your Honor. The public, as to the public function, there has to be some level of abstraction in looking at what the public function is. You can't just simply say this is, they're operating TV channels. If it's a public forum, in your view, every operator, no matter what, would be transformed effectively into a state actor? If an entity- I'm not familiar with your argument, but answer that question. I'm sorry. If the channel to which the speaker is seeking access is a public forum, then whoever is running speech in that forum is performing a public function. That is my argument, and I believe that the public forum and the public function arguments are linked. I cited in my reply the United Church of Christ case from the Sixth Circuit, in which the court said, and what I quote- It doesn't matter where the authority for regulating the speech comes from. It doesn't matter where the authority- If I go to a public park and I, for some reason, appear to have some authority, but it's just me, then I become a state actor. I'm sorry. Then I, you have to, there has to be a designation of the property for public expressive activity by government, and the government has to designate the operator or the person that regulates that speech. And if it, so there are factors of removal, right? So if the government appoints or designates someone who then designates a third actor who then designates, and on and on and on, it doesn't really matter how far removed the initial government action is from that last actor who is in the business of regulating the public space. We're not that far removed in this case. I understand, I'm just trying to understand your argument. I don't know how far I would take that, but, because it's not, it's not part of, it's not in this case. I don't know, honestly, how far I would take that, Your Honor. Getting, I don't really have to, there has to be some level of abstraction in the, deciding what's a public function in the Fabricant case. My last point is the public function was animal control, but the specific targeted activity was spaying and neutering. Thank you, Your Honor. Thank you.